
no payment

27

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

MICHAEL MCGUIRE,

                Petitioner,

                                    Case: 2:25-cv-12334
                                    Assigned To : Michelson, Laurie J.
                                    Referral Judge: Ivy, Curtis, Jr
                                    Assign. Date : 7/29/2025
v.                                    Description: HC MICHAEL MCGUIRE v ERIC RARDIN
                                    (LLH)

ERIC RARDIN, WARDEN,

                Respondent.

_____/

# PETITION FOR WRIT OF HABEAS CORPUS
# PURSUANT TO TITLE 28 U.S.C. § 2241

COMES NOW, Michael McGuire, (hereinafter, "Petitioner"), in pro se capacity, to respectfully move this honorable Court to grant his writ of habeas corpus under 28 U.S.C. § 2241. Petitioner moves the Court to direct Respondent to recalculate and expeditiously apply all earned Federal Time Credits (FTC) in tandem with all available Second Chance Act (SCA) amenities to his prerelease custody period in accordance with recent Bureau of Prisons (BOP), Director, William K. Marshall's specific direction.

1

## INTRODUCTION

The Second Chance Act (SCA) is a program that can reduce the incarceration of an inmate. The SCA was signed into law by President Bush in 2008. It clearly states that it ensures that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) in a community correctional facility (halfway house) or home confinement.

The Second Chance Act clarifies the statute governing federal halfway house and home detention placements. It does not require the BOP to place inmates in halfway houses earlier or for longer periods of time. But the bill does require the BOP ensure that, to the extent practicable, an inmate is considered for halfway house placement for up to 12 months; not just up to a maximum of 6 months or 10% of his time served whichever is less, as set forth in previous law. Under old law, an inmate with a sentence of 24 months could only get a maximum of 2.4 months of halfway house time. Now under the SCA, the inmate must be considered for up to 12 months of halfway house or home confinement.

In the First Step Act of 2018, Congress created a system under which many people incarcerated in the custody of the BOP can earn time credits that reduce their time imprisoned. Under that statute, the BOP must transfer eligible people from its prisons to home confinement or residential re-entry centers (commonly called halfway houses) when the time credits they have earned equal the remaining time on their

sentence. The statue is clear, "time credits shall be applied towards time in prerelease custody or supervised release, 18 U.S.C. 3632(d)(4)(c) (emphasis added).

SCA credits are tallied on a 5-point scoring system, administered by the BOP, and documented on a BPS-210 by their respective unit team.

FSA provides an "incentive" for prisoners to engage in "meaningful programming" to reduce time they will serve. To that end, Congress established an incentive-based system to encourage federal inmates to participate in "evidence-based recidivism reduction" (EBRR) programs and "productive activities" (PAs) 18 U.S.C. § 3621(h), 3632(d). Congress required the BOP to assess inmates unique profile to determine "risks and needs assessment system" in order for FBOP to evaluate an inmate's specific needs. Prisoners who "successfully complete" qualified programming earn "time credits" of ten days for every 30 days of participation and, for prisoners deemed low or minimum risk an additional 5 days per month. See Id. § 3632(d)(4)(A), the accrual of time credits, can result in early release from prison.

## JURISDICTION

The calculations of a federal prisoner's sentence is the responsibility of the Attorney General, acting through the BOP. *United States v. Wilson*, 503 U.S. 329, 334-35 (1991). Claims challenging the manner in which the BOP calculates a prisoner's sentence are properly raised in a petition for writ of habeas corpus under § 2241 in the district where the petitioner is imprisoned. See *Terrell v. United States*, 564 F. 3d 442,

3

447 (6th Cir. 2009). A district court may grant § 2241 relief when the BOP miscalculates a sentence. *McClain v. Bureau of Prisons*, 9 F. 3d 503, 505 (6th Cir. 1993). Because Petitioner is challenging the manner in which his sentence is being executed, this Court has jurisdiction.

## FUTILITY EXCEPTION

It is well established and recognized in this Circuit that 28 U.S.C. § 2241's exhaustion prerequisite is "not a statutory requirement." *Fazzini v. Northeast Ohio Corr. Center*, 473 F. 3d 229, 236 (6th Cir. 2006). Petitioner's habeas petition survives the exhaustion hurdle on this bases alone. However, as further stated in *Fazzini*, "a prisoner's failure to exhaust available...administrative remedies may be excused where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks." *Id.* Furthermore, as recently conveyed in *Hargrove v. Healy*, "when available remedies are inadequate or futile, do not serve the basic goals of exhaustion, or turn on the statutory construction, the Court may decide not to apply the exhaustion doctrine." *Hargrove v. Healy*, 2024 U.S. Dist. LEXIS 155038 (N.D. Ohio, Aug. 28, 2024); See e.g., *Aron v. LaManna*, 4 F. App'x 232, 233 (6th Cir. 2001)(noting exceptions); see also, *Goar v. Civiletti*, 688 F. 2d 27, 28-29 (6th Cir. 1982)("A long line of Supreme Court cases recognizes the rule that a party need not exhaust administrative remedies before bringing a claim to federal court when the administrative remedy is inadequate or cannot provide the relief requested.").

4

This being said, exhaustion of administrative remedies serves two primary purposes: (1) it "protects administrative agency authority," which "gives an agency an opportunity to correct its own mistakes with respect to programs it administers before it is haled into federal court..."; and (2) "promotes efficiency." *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2008)(internal quotations marks omitted).

Should the BOP avail itself to each and every extension permitted under its regulations (which it does more often than not), the exhaustion process will take 210 days to compete. See 28 C.F.R. § 542.15(a), § 542.18. Therefore, if Petitioner was forced to exhaust his remedies, he would suffer irreparable harm because the process would run past his statutory release date. <u>Moreover, this particular administration has had the opportunity to correct its own mistakes on multiple occasions and has either lied about doing so or are incompetent without proper guidance to do so on their own.</u>

For the reasons and factual support contain herein, Petitioner asserts that the futility exception applies and the exhaustion prerequisite process is not required. However, Petitioner has submitted a request to the Warden and as of the date of this filing, has received no response. (See Exhibit- B).

## SUMMARY OF ARGUMENT

This motion outlines how the BOP and FCI Milan's administration have maliciously manipulated policy and law. It violates an inmate's right to be released

from prison within the time mandated by FSA time credits and SCA amenities and if left unchecked, it will continue to do so in the future.

The staff at Milan FCI is guilty of systemic failure when it comes to ensuring that eligible prisoners are transferred out of prison within time frames mandated by FSA time credits and SCA amenities relative to those earned by prisoners.

Petitioner will demonstrate through a chronology of events that have occurred while he attempted to get clarification on when in fact he will walk out of prison after serving his sentence in an exemplary fashion.

It is with great despair that Petitioner asks this court to review this chronology of absurd and unlawful circumstances. Petitioner has been challenged and lied to at every turn, when he simply wants to go home on the date he was given as his out date from prison to home confinement or halfway house placement.

The arbitrary and capricious manner and attempts that Warden Rardin and staff unlawfully held or unreasonably delayed Petitioner, have gone unchecked to date. Petitioner hereby presents the chronology, with exhibits attached at each instance.

## CHRONOLOGY OF THE MALFEASANCE

1.  Petitioner Michael McGuire has served his time in prison as an exemplary inmate. He has held a full time position with the prison maintenance department, attends church weekly, has completed additional programming and has never caused a disturbance while incarcerated.

6

2.    Petitioner has sought his release date from staff for many months to no avail. Warden Rardin and his staff's malicious attempt to block Petitioner from receiving the proper time credits in order to leave FCI Milan on the date he is entitled to by Federal Law and BOP Policy is nothing short of criminal.

3.    Petitioner is not asking for some magical miracle. He only seeks the application of time credits he has already earned to be deducted from his sentence so that he may be immediately released from prison. Thus, resulting in an affirmative date he may share with his family and employer. Nothing more.

4.    On October 12, 2024, Petitioner met with Case Manager, Dew. He was informed by CM Dew that he had a "conditional transition to the community" date of May 1, 2025. (See Exhibit- A).

5.    On January 15, 2025, Petitioner again meets with CM Dew and is informed that his paperwork had been submitted for halfway house placement.

6.    On April 8, 2025, Petitioner once again meets with CM Dew and is now informed that his "halfway house date" has been changed to April 29, 2026.

7.    A memo published by FCI Milan on April 4, 2025 (See Exhibit- C) stated that inmates will only receive "60 days" of Second Chance Act (SCA) credits, which is in violation of the SCA itself, which requires the BOP staff to score each

individual inmate on a "5 Point Scoring System" which shall be documented on BOP Form BPS-210.

8. Petitioner has already been informed by CM Dew back in October, 2024 that he qualified for 1 year of SCA time credits. The sudden 60 day memo issued by FCI Milan has caused great dismay for Petitioner as he had been planning to go home on May 1, 2025 "conditional placement" date that he had previously been given. (See Exhibit- A).

9. Petitioner sent a letter to the RRM Director, at the Regional BOP Office, outlining the chain of events and asked for the 365 days of SCA to be applied to his release date. He has received no response.

10. Petitioner learned of three ACLU class action law suits that had recently been filed concerning the merits contained herein. These actions "demanded the BOP 'cease and desist' in their 'unlawful abuse of power.'" Petitioner sent letters to all three offices that were handling these lawsuits, requesting to become a member of the class action litigation. (See Exhibits- H and I).

11. On April 4, 2025, Petitioner learned in a letter from the ACLU out of Washington, D.C. that the "BOP has rescinded their attempt to take away SCA credits from prisoners," and that he should be receiving his credits back soon. (See Exhibit- D).

**12.** On May 8, 2025, two memorandums are published;

      1.    From the new Director of the BOP William Marshall to all "wardens."

      2.    Memo published on the BOP website on for the general public to see.

The memorandums discuss details on SCA and FSA. Both are contrary to law and policy and cause more confusion for staff and inmates. One memorandum conflicts with the other and is not consistent with policy.

**13.** On June 17, 2025 a "fiery" memorandum is released from BOP Director William Marshall. The memorandum clears up any confusion or disputes that might be occurring amongst staff and inmates. From the highest office in the BOP, the memo clearly outlines the Director's mandate for all BOP staff to immediately follow the letter of the law and BOP policy. (See Exhibit- J).

**14.** The memorandum brings relief to inmates and their families and accolades from the White House as to the Director's unequivocal demands to invoke policy immediately. The Director specifically says he wants this done and "without any more Bureaucratic inertia." (See Exhibit- K).

**15.** CM Dew retired and as of the date of this filing, no replacement Case Manager has been appointed by Warden Rardin in Petitioner's unit. Therefore Petitioner has nowhere else to turn for assistance.

Petitioner was told by staff to see the Case Manager in Unit H, as he was the "temporary case manager" for Dew's caseload.

17.    Petitioner makes several attempts to go see CM Racz at the other unit. When he finally meets with Mr. Racz, he explains that he is asking for his correct FSA and SCA time credits to be applied against his sentence, thus determining his correct "out date."

18.    Petitioner was met with total "distain" when he asked Mr. Racz for a copy of his BPS-210, which Petitioner is entitled to. The BPS-210 is the BOP's document that demonstrates staff did in fact go through the "5 point" process required to ascertain the amount of time Petitioner shall receive. (He had already been assured by CM Dew, last November that he has a year coming).

19.    Mr. Racz told Petitioner that he was not giving him a copy of his BPS-210. When Petitioner made an inquiry asking if he needed to have his family attorney call the warden to get a copy, Mr. Racz exclaimed, "I don't care if you ask the President, you ain't getting a copy."

20.    Therefore, petitioner cannot obtain something as simple as his release date from Warden Rardin's staff.

21.   Petitioner is attaching a legal newsletter that is sent to inmates weekly from a Federal Legal Center in Indianapolis, Indiana. The newsletter is also sent to the DOJ, and the White House each week.

22.   In last week's newsletter there was a comment published about an anonymous inmate's interaction with staff. The following is quoted from the men's facility Milan;

"I was told by my case manager that, there is no such guidance coming from the bureau and if there was it's not our business." The higher ups here stated "yeah, well the BOP only put that memo out to shut Congress up, but there is no such change." (See Exhibit- K).

23.   The cover up at Milan FCI is rampant throughout the BOP is unlawful and unconstitutional.

Petitioner's mother is dying, and he greatly wishes to see her before she passes. Therefore, Petitioner seeks an order from this Court directing the BOP and Warden Rardin to follow BOP policy and congressional intent by applying all credits to his sentence and releasing him to "immediate home confinement" within 10 days of an order from this Honorable Court.

The cover-up and challenges Petitioner has been forced to face should come upon no prisoner in Federal Prison.

Petitioner asks that the Court review the June 17, 2025 Memorandum, "Directive from BOP Director Marshall" to truly understand the BOP Director's frustration concerning his Wardens and staffs reluctance to execute policy as it is written.

This memo is the beginning of what is happening nationwide. It should come as no surprise to this Court that Petitioner has been treated in an unlawful manner by the BOP and that it has not been acting in accordance with its own policy and law. The BOP's continues to abuse its authority by systematically keeping prisoners in a jail setting beyond the date on which they become eligible for mandatory transfer under FSA/SCA and goodtime credits, all combined and maybe stackable, consecutive, or cumulative.

## CONCLUSION

To be sure, Warden Rardin is either grossly incompetent to carry out Director Marshall's specific directive concerning the applicable abilities of the use of FSA and SCA in tandem, or he is deliberately standing in defiance of the Director's instructions. Either way, at the end of the day, without an order from this honorable Court, Petitioner will suffer irreparable harm, as he will be forced to serve a term of incarceration longer than Congress had intended. Wherefore, Petitioner respectfully requests that the Court order Warden Rardin to "restore integrity and fiscal responsibility to the federal prison

system"[1] by complying with Director Marshall's directive and applying all available amenities contained within the FSA and SCA to their fullest.

Respectfully submitted on this 22nd day of July, 2025.

/S/ _Michael McG_____

MICHAEL MCGUIRE #18277-029

## CERTIFICATE OF SERVICE

I, Michael McGuire, being of sound mind, do hereby CERTIFY under penalty of perjury and pursuant to Title 18 U.S.C. § 1746 that all statements made and documents presented herein are true and authentic to the best of my knowledge. A copy of this PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C. § 2241 has been placed in the prison mail system at FCI Milan, Milan Michigan addressed to the United States District Court, Eastern District of Michigan.

Respectfully submitted on this 22nd day of July, 2025.

/S/ _Michael McG_____

MICHAEL MCGUIRE #18277-029

---

[1] Director, William Marshall's own words contained in his directive to fully implement FSA and SCA in tandem. (See Attachment J)

# Exhibit Directory

**Exhibit- A**             "Transitioned to Community Date" of May 1, 2025

**Exhibit- B**             Request to Warden

**Exhibit- C**             Milan FCI Memo regarding SCA 60 day max credit

**Exhibit- D**             ACLU Letter

**Exhibit- E, F, G**       ACLU Class Action Letters

**Exhibit- H**             BOP Memorandum  re: Home Confinement

**Exhibit- J**             June 29th Memorandum from Director of BOP

**Exhibit- K**             Federal Legal Center Bulletin

FSA Time Credit Assessment
Register Number:18277-029, Last Name:MCGUIRE

**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only ------------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case SCA days as of 10-12-2024. These dates
can change if there are changes to one or more of the following: the individuals FSA risk,
FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 365 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---
Projected Release Date: 06-04-2028
Projected Release Method: GCT REL
FSA Projected Release Date: 06-05-2027
FSA Projected Release Method: FSA REL
FSA Conditional Release Date: 06-05-2027
SCA Conditional Placement Days: 365*
SCA Conditional Placement Date: 06-05-2026*
FSA Conditional Placement Days: 400
FSA Conditional Placement Date: 05-01-2026
Conditional Transition To Community Date: 05-01-2025*
**\*Default SCA conditional placement days. This requires a five-factor review!**



TRULINCS  18277029 - MCGUIRE, MICHAEL SHAWN - Unit: MIL-A-B

--------------------------------------------------------------------------------------------

FROM: 18277029
TO: MIL/RISCoordinator
SUBJECT: ***Request to Staff*** MCGUIRE, MICHAEL, Reg# 18277029, MIL-A-B
DATE: 07/08/2025 06:24:48 PM

To: Warden Rardin/RIS Coordinator
Inmate Work Assignment: Maintenence 1

Warden Rardin,
I am requesting that I receive my 1 year sentence credit under the Second Chance Act for which I am entitled to and under the
5 point scoring system I qualify.  I have have asked Mr. Dew about this and he has since retired. My family contacted an
attorney who said the Director of the BOP has ordered staff to award credits without delay. My date would have been May 1,
2025 and I am still here. My mother has Alzheimer's and is 95 years old, I want to see her again before she passes. Can you
please help me get my release initiated. Thank you very much, Michael McGuire

MIL-1330.16.b
September 18, 2012
Page 7

Attachment B/Part 1
FCI/FDC Milan, Michigan
**Attempt at Informal Resolution**

REMEDY # _____

Inmate's Name: _____

Registration Number: _____ Housing Unit: _____

## ATTEMPT AT INFORMAL RESOLUTION:

1. Briefly state the complaint and requested corrective actions. My "FSA Time assessment Sheet" informed me I was elligible for HH/HC on May 1st, 2025. He then submitted the paper work for HH/HC. On April 4th 2025 My case manager informed me my 1/2 house day was April 29th, 2026. After reviewing this I see I only received 2days of SCA. I have since reviewed and self scored the SCA 5 point factors. On the "RRC placement under the Second chance Act" scoring sheet. My score is as follows: 120 mo. Sentence = 5 pts. Positive or Much improved conduct = 1 pt., program participation-Cont, programming = 1 pt., Community resources (3-1/2 way houses in my district) Needs release residents = 1 pt, Needs employment = 1 pt., Limited finances = 1 pt., Limited visits = 1 pt., Medical Needs = 1 pt., Mental Health = 1 pt. This totals 13 pt. The "RRC placement under the SCA" scoring sheets allows me 12 Mo. Please award me my appropriate points/Days

2. Document your efforts to resolve the matter to include policies reviewed. Note any reasons an informal resolution could not be achieved.

I visited with the Case Manager. He told me "he couldn't do anything and he Couldn't re-submit."
I visited with the unit manager. He said "nothing he could do."
I visited with CMC. He said "that's what they have been seeing."
I visited with the A.W. He said "They were told Not to re-Submit and file the 8."
I reviewed the "RRC placement under the Second Chance Act" scoring sheet. It gives the program statement, P.S. 73 100.04

Inmate Signature: _____ Date: _____

Inmate Printed Name: _____

Unit Counselor Signature: _____ Date: _____

Unit Counselor Printed Name: _____

# FCI Milan Inmate Bulletin

This is to inform the inmate population at FCI Milan that effective immediately, all inmates releasing to the community under Second Chance Act (SCA) authority after April 21, 2025 will have their dates adjusted to reflect a maximum of 60 days RRC placement. Moving forward, all RRC referrals submitted under Second Chance Act authority (SCA) will be for a maximum of 60 days with the exception that inmates participating in the Residential Drug Abuse Program (RDAP) will have their release via 3621e CMPL transfer date reduced to allow for a 125-day placement in the RRC in order to facilitate the completion of TDAP.

Inmates who have earned and are eligible to apply FTCs towards pre-release custody will continue to be referred to the community for the amount of time earned under the First Step Act (FSA) plus 60 days Second Chance Act (SCA).

While these circumstances are regrettable, they are being implemented Bureau wide and are necessary in order to address ongoing and projected budget constraints.

Further guidance will be disseminated as it is received.

Thank you,

*Exhibit "C"*

MCGUIRE, MICHAEL



**ACLU**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
District
of Columbia

529 14th Street, NW
Suite 722
Washington, DC 20045
(202) 457-0800
www.acludc.org

Greetings,

Thank you for reaching out about the lawsuit *Crowe v. Bureau of Prisons*, Civil Action No. 1:24-cv-03582 (D.D.C.). You contacted us in light of the Bureau of Prisons (BOP) issuing a memorandum on 03/31/2025 to announce their limiting of Second Chance Act (SCA) prerelease availability to 60 days. We are writing to inform you that this memorandum has since been **rescinded**. See below BOP's message announcing that this change to SCA placements will no longer take effect:

> Good afternoon,
>
> We have an update we want to share regarding the memo issued on March 31, 2025, announcing limitations on Second Chance Act (SCA) placements in Residential Reentry Centers. Based on concerns about how these limitations impact the population, BOP will not proceed with the planned changes to limit SCA placement to 60 days. A new memo was issued today, April 10, 2025, rescinding the previous guidance.
>
> Respectfully,
>
> **Donald Murphy**
> Office of Public Affairs
> Federal Bureau of Prisons

As a result, your SCA prerelease availability should be returned to the number of days it was prior to 03/31/2025. We hope this information is useful and we wish you the best.

Sincerely,
*Staff for the ACLU of the District of Columbia*



Michael Shaw McGuire #18277-029
Milan Correctional Institution
P.O. Box 1000
Milan, Michigan 48160

Filed: April 4, 2025

Jenner & Block LLP
Attn: Attorney Elizabeth Henthorne
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
(202) 637-6367

RE: <u>Class Action Law Suit/ Second Chance Act</u>

Attorney Elizabeth Henthorne,

I would like to be included in your class action litigation in regards to the Bureau of Prisons disregard for the Second Chance Act and laws that empower it.

I humbly submit the following information for your considerations so that you may include me in this litigation. Please provide me with any documents necessary to authorize you to include me in your class action litigation against the Bureau of Prisons and inform me of the details on the litigation.

Michael Shaw McGuire Reg. # 18277-029
Case # 19-CR-2075
Sentence Length: 120 months
Projected Release Date: 6/4/28
FSA Projected Release Date: 6/5/27
SCA Conditional Release Date: 5/1/25

Thank you for your time and considerations to this delicate matter.

Sincerely,

MICHAEL SHAW MCGUIRE

Exhibit
"B"

Michael Shaw McGuire #18277-029
Milan Correctional Institution
P.O. Box 1000
Milan, Michigan 48160

Filed: April 4, 2025

ACLU
Attn: Attorney Arthur B. Spitzer
529 14th Street, N.W., Suite 722
Washington, DC 20045
(202) 457-0800

RE: Class Action Litigation/ Second Chance Act

Attorney Arthur B. Spitzer,

I would like to be included in your class action litigation in regards to the Bureau of Prisons disregard for the Second Chance Act and laws that empower it.

I humbly submit the following information for your considerations so that you may include me in this litigation. Please provide me with any documents necessary to authorize you to include me in your class action litigation against the Bureau of Prisons and inform me of the details on the litigation.

Michael Shaw McGuire Reg. # 18277-029
Case # 19-CR-2075
Sentence Length: 120 months
Projected Release Date: 6/4/28
FSA Projected Release Date: 6/5/27
SCA Conditional Release Date: 5/1/25

Thank you for your time and considerations to this delicate matter.

Sincerely,

MICHAEL SHAW MCGUIRE

Exhibit
"GF"

Michael Shaw McGuire #18277-029
Milan Correctional Institution
P.O. Box 1000
Milan, Michigan 48160

Filed: April 4, 2025

ACLU
Attn: Attorney Emma A. Anderson
125 Broad Street, 17th Floor
New York, New York 10004
(929) 969-4365

RE: <u>Class Action Law Suit/ Second Chance Act</u>

Attorney Emma A. Anderson,

I would like to be included in your class action litigation in regards to the Bureau of Prisons disregard for the Second Chance Act and laws that empower it.

I humbly submit the following information for your considerations so that you may include me in this litigation. Please provide me with any documents necessary to authorize you to include me in your class action litigation against the Bureau of Prisons and inform me of the details on the litigation.

Michael Shaw McGuire Reg. # 18277-029
Case # 19-CR-2075
Sentence Length: 120 months
Projected Release Date: 6/4/28
FSA Projected Release Date: 6/5/27
SCA Conditional Release Date: 5/1/25

Thank you for your time and considerations to this delicate matter.

Sincerely,

MICHAEL SHAW MCGUIRE

Exhibit
"g"

## Home Confinement and Prerelease Placement Updates

**We're Maximizing Pre-Release Custody**

The Bureau of Prisons (BOP) is combining or "stacking" two laws—the *First Step Act (FSA)* and the *Second Chance Act (SCA)*—with the goal of maximizing the amount of time eligible individuals can spend in prerelease custody.

**More People Will Go Directly to Home Confinement (HC)**

- If you've earned time credits under the FSA and able to apply your credits and/or are eligible under the SCA, you do not require the services of a Residential Reentry Center (RRC), and meet eligibility requirements and are appropriate for HC, you shall be referred directly to **HC**.

- The goal is to reserve halfway house beds for those who need them most.

**Conditional Placement Dates**

- For those who are FSA eligible and able to apply FTCs, your release to the community will be based on a **Conditional Placement Date**, which considers both your earned FSA Time Credits *and* whether you're eligible under the SCA.

- These are **projected dates**, meaning they assume you continue to successfully participate in programming and remain discipline-free.

**If You Qualify, Your Referral Should Not Be Delayed**

- If you're eligible under FSA and/or SCA and meet all criteria, **your referral should not be delayed**.

- Staff will refer you based on your **Conditional Placement Date**, even before your credits are fully earned.

**What You Don't Need to Be Referred**

- **You do not need to have prior employment** to be considered for home confinement.

- Your **potential** to work may be viewed positively, but it is not required.

- Your release plan, stability, and public safety risks are what matter most.

**The Rules Are Clear**

- There is **no limit** on how many FSA credits you can apply toward home confinement.

- If you're only eligible under the SCA, your prerelease time is limited to **up to 12 months in a halfway house or up to 6 months (or 10% of your sentence) in home confinement**—whichever is less.

- For individuals who have earned less than 365 days of FSA Time Credits towards supervised release, staff must also consider adding **up to** an additional 12 months of prerelease time under the SCA, **based on the five-factor review**.

  - The FSA Time Credit Work Sheet for time under the SCA defaults to and will remain "0" until your Unit Team inputs the prerelease time as determined based on the five-factor review. This number will range from 0 to 12 months.

Exh H



**U.S. Department of Justice**
**Federal Bureau of Prisons**

**FOR IMMEDIATE RELEASE**
June 17, 2025

Contact: Office of Public Affairs
202-514-6551

### Bureau of Prisons Issues Directive to Fully Implement First Step Act and Second Chance Act

**WASHINGTON, DC** - In order to restore integrity and fiscal responsibility to the federal prison system, the Bureau of Prisons (BOP) today issued a policy memorandum to staff directing the robust and comprehensive implementation of both the *First Step Act of 2018* and the *Second Chance Act of 2008*—two bipartisan cornerstones of modern criminal justice reform.

"This is the dawn of a new era, one in which the Bureau of Prisons will realize the full potential of the First Step Act and Second Chance Act," said BOP Director William K. Marshall III. "The comprehensive policy outlined today will eliminate barriers to maximize the availability of home confinement to those who qualify for community release under the First Step Act and Second Chance Act. This change in policy will fully operationalize the laws as intended by Congress and ensure a smoother transition for many individuals to return to productive lives after incarceration."

The new policy announced today will have immediate and meaningful benefits. It will:

- **Avoid wasting millions of taxpayer dollars** on unnecessary incarceration,
- **Reduce strain on prison bedspace and staffing,** and
- **Eliminate prolonged and unnecessary burdens on inmates and their families**—particularly those with stable home environments and strong community ties.

The new directive ensures that:

- **FSA Earned Time Credits and SCA eligibility will be treated as cumulative and stackable,** allowing qualified individuals to serve meaningful portions of their sentences in home confinement when appropriate.
- **Conditional Placement Dates**—based on projected credit accrual and statutory timelines—will drive timely referrals, not bureaucratic inertia.
- **Stable housing and community reintegration readiness,** not past employment, will guide placement decisions.
- **RRC bed capacity limitations will not be a barrier to Home Confinement** when an individual is statutorily eligible and appropriate for such placement.

Director Marshall continued: "This action marks a bold shift from years of inaction toward a policy rooted in **public safety, fiscal responsibility, and second chances**. By empowering the agency to release more people who are ready to return to society, we not only save taxpayer dollars, we strengthen families, ease overcrowding, and build safer communities."

###

TRULINCS

*Federal Legal Center Bulliten*

--------------------------------------------------------------------------------

Texas: "Case Managers are still Teaming under the old, unlawful system and unlawfully tricking (prisoners) into signing for a half-way house date before their time has been applied and even when they are direct to home-confinement eligible. The Warden claimed the new mandate does not apply here and Unit Teams say they have nothing to do with the changes (or following the law) as they are waiting for changes and directions from RRM-Grand Prairie. One Unit Team Manager informed the unit that their 'dates would not change, so do not bother asking. And pray to whoever you pray to that you get to keep the date you already have instead of it getting taken.'"

This from the men's facility at Milan: "I was also told (by my case manager that, 'there was no such guidance coming from the bureau and if there was it's not our business.' The higher ups here stated, 'Yeah, well, the BOP only put that memo out to shut Congress up but there is no such change.'"

Hopefully, the Director can pull this together, and in the meantime, his new deputy, Joshua J. Smith, did a rare, largely unescorted tour of Coleman, where he listened to prisoners' complaints without staff interference. These were just some of the complaints aired, which are not unique to Coleman: "1. Inability and/or unwillingness of staff to properly place FSA and SCA time. 2. Widespread use of group punishment. 3. Seemingly institutionalized homophobia and racism exhibited by staff, as in not just a couple bad actors. 4. Environment of something resembling a partial lockdown. Remember this is a low. 5. Almost total lack of rehabilitate training. Our only vocational classes regularly in use are horticulture and culinary and i have been on both waiting lists for over 5 years, as an example. 6. 3 men to a room of roughly 80 square feet in violation of congressional mandate regarding housing space; they try to get around it by counting the total floor area of the unit."

Unfortunately, it is often necessary for prisoners to file administrative remedies and a 2241 petition in federal court to obtain their proper FSA or Second Chance Act credits. Prisoners attempting to file without professional assistance face an uphill battle even if the FSA/SCA laws favor their situation, as the Bureau has long experience in defending these claims. We can assist with this complicated process.

Notwithstanding, judges have become more sympathetic to prisoner appeals on this subject. Under the First Step Act, (FSA), Time Credits " shall" be applied when incarcerated people earn them. The FSA makes this clear two separate times. First, in 18 U.S.C. § 3632(d)(4)(A), the FSA states that "[a] prisoner who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits .... " Second, in 18 U .S.C. § 3632(d)(4)(C),the FSA states that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release" and that "[t]he Director of the Bureau of Prisons shall transfer eligible prisoners  into prerelease custody (emphasis added.)" Petitioner is clearly eligible for FSA credits and attaches hereto evidence thereof.

As one federal judge explained in a 2021 case of O'Bryan v. Cox. 20-7582, (D of NJ , 8-25-2020), "[m]andatory words such as 'shall ' impose a duty and permissive words such as 'may ' grant discretion .... " Because Congress was clear in using the mandatory word "shall" in these instances, that court concluded, "no deference is to be accorded to the BOP position that it need do nothing with accrued time credits under the FSA until January 15, 2022." As the O'Bryan court noted, this is the only interpretation permitted by the " shall" heavy statute.

Two cases that struck down the Bureau's attempts to limit FSA credits and halfway house placements are Yufenyuy v. Warden, where U.S. Magistrate Judge Andrea K. Johnstone, a federal judge in New Hampshire, ordered the BOP to apply the First Step Act time credits a federal prisoner, Austen Yufenyuy, had earned while in BOP custody from the date of sentencing, and 24- 3053-JWL United States District Court, District of Kansas, Woodley v. Warden, USP Leavenworth/ In this case the judge rejected the Bureau scheme of stating that no room was available at the halfway house.

`In Woodley, the court ruled: "No condition concerning bed availability is included among the requirements for eligibility under Section 3624(g), thus immediate placement in prerelease custody is required under Section 3632(d)(4)(C)." The statute uses mandatory 'shall' language. Multiple courts have held the BOP has no discretion to delay transfer of eligible prisoners to prerelease custody. See Doe v. Federal Bur. of Prisons, 2024 WL 455309 (S.D.N.Y. Feb. 5, 2024); Ramirez v. Phillips, 2023 WL 8878993 (E.D. Cal. Dec. 22, 2023); Komando v. Luna, 2023 WL 310580 (D.N.H. Jan. 13, 2023).

Recent California federal court decision in McCaa v. Warden, FCC Victorville, 24cv2590, rejected the BOP's argument that it has sole discretion over halfway house transfers, contrary to FSA's clear language. The court held it has jurisdiction to review alleged violations of statutes, regulations, and the Constitution. See Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016) (federal courts have jurisdiction when BOP acts "contrary to established federal law, violated the Constitution, or exceeded its statutory authority").

Restrictive Bureau software has imposed even more restrictions on the number of transmissions that we can make,

-----------------------------------------------------------------------------------------

meaning that you might receive the newsletter any day of the week, depending upon your last name. To ensure your timely access to important information, add your family to our growing list of email subscribers, at dgilna1948@yahoo.com. This will permit us to send you to a new email address should your email be blocked by the institution. If your prison has been blocked, have your outside contacts email us at dgilna1948@yahoo.com to receive a new email portal for regular communications.

Never quit, never surrender. Let not your heart be troubled.

Derek Gilna, Director of Research, JD, (De Paul Law School, 1975), MARJ, (Vermont Law School, 2020), Federal Legal Center, 133 W. Market, #171, Indianapolis, IN 46204; dgilna1948@yahoo.com (English newsletter and ALL inquiries, English or Spanish); federallc_esp@yahoo.com, Spanish newsletter, but NO inquiries. Once again, remember that when you leave space for us to reply, you are more likely to get a response. 58743776



Michael McGuire
18237-029
FCI - Milan
P.O. Box 1000
Milan, Michigan
48160

Legal Mail

U.S. MARSHAL

RDC 99

Retail
U.S. POSTAGE PAID
FCM LG ENV
MILAN, MI 48160
JUL 25, 2025
$0.00
48226
S2324PS05163-48

CERTIFIED MAIL
9589 0710 5270 0756 3342 41

United States Courthouse
Attn: Clerk of Court
231- West Lafayette Blvd, 5th Floor
Detroit, MI
48226

RECEIVED
JUL 29 2025
CLERK'S OFFICE
U.S. DISTRICT COURT